## <u>Exhibits List to Declaration of Andrew Levine</u>

Exhibit 1…………………………………………………...……Pages 3-4

Exhibit 2…………………………………………………...Pages 5-9

Exhibit 3………………………………………………...Pages 10-15

Exhibit 4………………………………………………...Pages 16-18

Exhibit 5………………………………………………...Pages 19-44

Exhibit 6……………………………………………...Pages 45-52

Exhibit 7……………………………………………...Pages 53-55

Exhibit 8……………………………………………...Pages 56-62

Exhibit 9……………………………………………...Pages 63-67

Exhibit 10……………………………………………Pages 68-72

# EXHIBIT 1

EXHIBIT 1
Page 3

| From: | Andrew Levine |
| --- | --- |
| To: | Janet Satterthwaite; Julia Anne Matheson; Marci Lerner Miller |
| Cc: | Toby Rowe; Gunnar Martz; Gunnar Martz |
| Subject: | Wave Soda v. Ocean Spray, No. 21-809 GPC BLM (S.D. Cal. 2021) |
| Date: | Monday, May 10, 2021 11:12:38 AM |

Janet / Julie –

On March 3, 2021, Plaintiff Wedge Water LLC dba Wave Soda ("Wave') requested that Defendant Ocean Spray Cranberries, Inc. ("Ocean Spray") provide Wave with information regarding  a narrow set of topics related to Wave's contemplated motion for preliminary injunction, which will seek to protect Wave from further irreparable harm occasioned by Ocean's Spray launch of its infringing products via Walmart and Sam's Club and its likely imminent expansion into additional retail channels.  Ocean Spray refused to provide the requested information.

Earlier today at 10:30 am PT, we spoke by telephone to reiterate Wave's request for the information identified in my May 3, 2021 email and to provide notice of Wave's intend to file an ex parte application later today with Judge Curiel.   As with our previous exchange, you indicated that Ocean Spray would not provide the requested information and will oppose Wave's application.  I also note that during our call I asked whether Ocean Spray had imminent plans to launch its infringing Ocean Spray WAVE product into new retail channels in the near future.  You refused to answer.

Please take this as formal notice (following up on our March 3 exchange and call this morning) that later today, May 10, 2021, Wave intends to file an Ex Parte Application For Expedited Discovery in Support of Preliminary Injunctive Relief.

Regards,
Andrew


Andrew Levine
B R A U N H A G E Y & B O R D E N  L L P
Direct:  (415) 599-0207

**San Francisco**
351 California St., 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

**EXHIBIT 1**
**Page 4**

# EXHIBIT 2

EXHIBIT 2
Page 5

| **From:** | Julia Anne Matheson |
|---|---|
| **To:** | Andrew Levine |
| **Cc:** | Janet Satterthwaite |
| **Subject:** | Response to Wave Soda LLC Demand Letter |
| **Date:** | Tuesday, April 20, 2021 1:42:28 PM |
| **Attachments:** | image002.png |
| | image004.png |
| | Response to WAVE Demand Letter 4-20-21.pdf |

**\*\*\* EXTERNAL MESSAGE \*\*\***

Dear Mr. Levine,

Our response to your April 9, 2021 demand letter to Ocean Spray on behalf of Wave Soda LLC is attached.

Please contact me with any questions.

Best regards,


**Julia Anne Matheson** | Partner | Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW Suite 700
Washington, D.C.
Tel: (202) 251-6920  | Fax: (202) 318-7707
jmatheson@potomaclaw.com | www.potomaclaw.com

  

 

**EXHIBIT 2**
**Page 6**



Julia Anne Matheson
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW, Suite 700
Washington, D.C.  20004
Telephone: (202) 251-6920
jmatheson@potomaclaw.com

## CONFIDENTIAL AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION

April 20, 2021

Andrew Levine, Esq.                                          VIA EMAIL
Buran Hagey & Borden LLP
351 California Street
10th Floor
San Francisco, CA 94104

Demand Letter re OCEAN SPRAY WAVE Mark

Dear Mr. Levine,

We are outside trademark counsel to Ocean Spray Cranberries, Inc.  Your April 9, 2021 letter to Ocean Spray was referred to us for response.  Please direct all future correspondence on this matter to our attention.

As the owner of multiple valuable trademarks, Ocean Spray understands the necessity of actively policing a trademark portfolio.  However, after carefully considering the allegations in your letter, we must respectfully disagree with your assertions of trademark and trade dress infringement and decline to advise our client to accede to your demands.

### 1.  WAVE

As you know, your client does not own a trademark registration for the word WAVE.  In fact, your client was unable to register this mark *(c.f.* abandoned application Serial No. 88092312) because of a longstanding prior registration for WAVE, Reg. No. 3954769, for "beverages, namely, flavored water" owned by Hatsman Holding LLC, the owner of a number of WAVE registrations.  As I am sure you are also aware, that mark is in use.  And, indeed, the registrant recently filed its required declaration of use and enclosed this specimen:

**EXHIBIT 2**
**Page 7**

Andrew Levine, Esq
April 20, 2021
Page **2** of **3**



As such, we are puzzled by your suggestion that your client owns unique rights in the mark WAVE, much less WAVE for sparkling beverages sold in a can with fruit on the label. The fact that your client had to re-file for <u>NEW</u> WAVE in an attempt to get past this prior registration is tantamount to an admission that your client believed that its addition of the term NEW created a sufficiently distinct commercial impression to render confusion unlikely. We assume the Examiner who approved your application for publication was influenced by the numerous coexisting third-party WAVE-formative marks for beverages (*e.g.*, HAWAIIAN WAVE, SPARKLING WAVE, DRINK WAVE, JUICE WAVE, and many others).

### 2. NEW WAVE vs OCEAN SPRAY WAVE

Given the above, we assume that your client claims rights only in the word mark NEW WAVE. Your letter advises that your client was founded in 2016. Your client's trademark application was filed June 21, 2017 (in the name of Wedge Water, LLC, not Wave Soda, LLC), and claims a first use date of January 10, 2017. We trust, therefore, that your client's claimed rights in this mark do not predate 2017.

Our client, on the other hand, owns a federal registration for OCEAN SPRAY WAVE, Reg. No. 4641901, for "Fruit juice and fruit juice drinks." Our client's rights under this registration date back to at least as early as 2013. Our client's use of this mark on the sparkling fruit juice products cited in your letter is clearly covered by this registration. As such, it is not correct for you to claim that this brand is "defunct." Indeed, were these marks to be found confusingly similar, which is not conceded, our client would have priority. It is thus highly unlikely that a court would order our client to cease and desist use of its mark.

### 3. Trade Dress

Your letter also asserts a claim of trade dress infringement, but fails to articulate at all, much less with the required degree of specificity, the elements that you claim

**EXHIBIT 2**
**Page 8**

Andrew Levine, Esq
April 20, 2021
Page **3** of **3**

comprise this common law right.  Without the benefit of knowing what you claim as trade dress, we have nevertheless compared the products as set forth in your letter. We can dismiss a white background as nondistinctive in the soft drink can category.  Our client's trade dress otherwise consists of the famous OCEAN SPRAY Wave Logo, a motif associated with our client for over 50 years, as part of the composite mark OCEAN SPRAY WAVE, as well as drawings of fruit which serve to describe and amplify the flavors of the products.  Our client's trade dress does not contain any imagery referencing a surfing or VW van motif, which your own letter emphasizes is a key element of your client's branding.  Nor are *any* of the nonwhite colors the same.

Your letter also asserts that Ocean Spray has deliberately imitated your client's trade dress.  Our client advises that that is not the case.  Accordingly, unless you have actual evidence of this to inform due diligence as to information and belief, we caution you against making such assertions in any public forum.

## 4. Other Matters

The comparison of advertising copy in your letter is also puzzling, as there is, in fact, no similarity whatsoever.  Unless your client is asserting that it owns the entire trending category of sparkling fruit juice with a touch of caffeine, this aspect of your letter does not even merit a response.

The comment of a distributor is neither persuasive nor relevant, as it reflects that he or she is obviously not confused.

You letter also implies that you intend to seek a court order absent prompt and total capitulation by Ocean Spray.  We are confident that no court would grant you a preliminary injunction given our client's prior registered rights, which, along with the other issues we have raised here, would call into doubt your client's chances of success on the merits.  While Ocean Spray has no interest in litigating this matter, should you commence litigation, our client would be forced to counterclaim, at the very least, to cancel your client's registration based on our client's prior rights.

In view of the above, we are unable to advise our client to accede to your overreaching demands.

This letter is without prejudice to, and does not waive, any claims or defenses not asserted herein.

Sincerely,

Julia Anne Matheson
Janet F. Satterthwaite

**EXHIBIT 2**
**Page 9**

# EXHIBIT 3

EXHIBIT 3
Page 10

April 9, 2021

<u>**VIA EMAIL AND U.S. MAIL**</u>

Tom Hayes
President and CEO
Joseph L. Harrington
General Counsel
Ocean Spray Cranberries, Inc.
1 Ocean Spray Drive
Lakeville, MA 02349
Email: thayes@oceanspray.com
         jharrington@oceanspray.com

    **Re:**    **Notice of Infringement of NEW WAVE® Trademark and Trade Dress Demand for Assurances and Preservation of Records**

Dear Messrs. Hayes and Harrington:

We are litigation counsel to Wave Soda LLC ("Wave"), makers of NEW WAVE® Soda ("Wave Soda") and owner of the registered trademark NEW WAVE®.  We write regarding Ocean Spray Cranberries Inc.'s ("Ocean Spray's") infringement of Wave's trademark and trade dress rights through a new line of soda products called "Ocean Spray Wave" (the "Infringing Products").  We request that Ocean Spray immediately modify Ocean Spray Wave's branding and trade dress to stop its infringement.

It is clear that Ocean Spray knows a good opportunity when it sees one.  For example, it was a brilliant piece of marketing to ride the wave of the Ocean Spray Guy's "dreamy" and viral TikTok video.  But Ocean Spray cannot do the same with Wave Soda.  As you know, Wave created a new, better-for-you soda product that has attracted a growing number of consumers looking for healthier soda options.  This new market segment is big and exciting.  There is room for new products and Wave has no objection if Ocean Spray wants to compete fairly for consumers.  But unlike the Ocean Spray Guy, Wave has a federally protected, trademarked product and distinctive trade dress associated with its Wave Soda brand.  It has no interest in permitting Ocean Spray to freeride off its trademark, trade dress and growing popularity with consumers by sowing confusion.

Wave is a rapidly-growing beverage company based in San Marcos, California.  The company was founded in 2016 by Nat Noone, a beverage industry veteran and self-described soda fanatic who wanted to offer consumers a healthier, tastier alternative to sugary drinks and bland seltzers.  Wave's growing team shares Nat's passion for beverages and an active

**EXHIBIT 3**
**Page 11**

lifestyle—the Wave Soda surfboard and VW van are not just for show.  Wave also donates a portion of its sales to help not-for-profit organizations such as the Breast Cancer Foundation through its monthly non-profit donation program.



Together, this group, many of whom have worked closely together for years in the beverage industry, pioneered an entirely new product category by launching Wave Soda, which combines simple ingredients – sparkling water, fruit juice, and a small amount of caffeine – into a soda alternative that is healthier and tastier than traditional sugary sodas and sparkling waters. Consumers have responded, making Wave Soda one of the fastest-growing beverage brands in the United States, with millions of dollars in annual sales in thousands of stores across the country.  Wave Soda has since been heralded as a brand on the rise by the news media and industry press, including being named one of the "Best Healthy Sodas" by *Shape Magazine* and winning *Beverage Digest's* "Best Packaging and Label Design" award in 2020.  Wave is poised to continue growing as one of the hottest and most successful beverage start-ups in the country. To help with this growth, Wave Soda has financial backing from some of the largest players in the beverage industry, including AB InBev's ZX Ventures.

Wave is the owner of the federally-registered trademark NEW WAVE® in International Class 32 (U.S. Reg. No. 5571632) and related trademark and trade dress rights.  Its distinctive trademark and trade dress appear as follows:



Wave has invested considerable time, money, and effort to develop, market, advertise, and grow its brand and consumer goodwill.  The Wave Soda mark and brand has received tens of millions of dollars in advertising exposure and is prominently featured in nationwide advertising

**EXHIBIT 3**
**Page 12**

campaigns, including on Facebook, Instagram, Twitter, and other social media.  As a result of its success in these efforts, Wave Soda is an exceptionally popular national brand with highly distinctive trademarks and trade dress.

It has come to Wave's attention that Ocean Spray has recently launched for sale and begun marketing a nearly identical line of sparkling beverage products called "Ocean Spray Wave" (the "Infringing Products"). The Infringing Products have no relationship to Ocean Spray's defunct line of sugary fruit juices called "Wave," which were discontinued at least as early as 2017.  Instead, like Wave Soda, the Infringing Products are marketed as a healthier alternative to sugary sodas and are made by mixing sparkling water, fruit juice, and small amounts of caffeine.  Troublingly, the Infringing Products also feature branding and trade dress that are confusingly similar to the NEW WAVE® Soda trademark and trade dress:



The Infringing Products have only just launched in Sam's Club locations and the Walmart.com website but are already producing confusion in the marketplace.  Wave already has been contacted by consumers, distributors and members of the press to inquire about the Infringing Products.  A distributor based in Virginia expressed the view that Ocean Spray is "ripping off" Wave Soda.  Industry press have also noted that the "new line's identity would

**EXHIBIT 3**
**Page 13**

seem to overlap a bit with lightly sweetened and caffeinated sparkling entry called Wave Soda launched by bev vet Nat Noone." *Beverage Business Insights*, Vol. 18 No. 41, March 4, 2021.

Beyond this remarkable visual similarity between NEW WAVE® Soda and the Infringing Products, Ocean Spray's marketing pitch for the Infringing Products is virtually identical to the marketing of Wave Soda as a new product category offering.  By way of example, the Wave Soda website states:

> What started as a local fruit stand is now an all-natural, healthy soda brand that's sold and distributed across the country. Founder and CEO, Nat Noone, saw a need in the beverage industry for a guilt-free carbonated drink, with the added benefit of caffeine, so Wave Soda came to be.

Similarly, Ocean Spray's inaugural press release announcing the Infringing Products sought to position Ocean Spray Wave in the exact same market niche that Wave Soda pioneered, a new product category that "bridges the gap" between soda and healthier carbonated drinks:

> Ocean Spray Wave bridges the gap for consumers who want a lightly caffeinated option – with the convenience and flavor of soda – but without the added sugars.

The similarities between the Infringing Products and Wave Soda is not random. Rather, it appears that Ocean Spray observed Wave Soda's success and then decided to launch the Infringing Products into the exact same space using confusingly similar trademarks, trade dress, and marketing themes.

There is little question that the launch of the Infringing Products has already caused consumer confusion, which only will increase if the Infringing Products are launched more broadly at retail stores beyond Walmart and Sam's Club.  Given the strength of Wave Soda's NEW WAVE® trademark and trade dress; the similarity of the Infringing Products, their mark and trade dress to Wave Soda's trademark and trade dress; the proximity of the product's marketing and retail channels; and their direct competition for consumers, we are confident that a court will find a strong likelihood of confusion under the factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). Moreover, while Wave has not yet had the benefit of discovery, internal Ocean Spray documents are likely to reveal that Ocean Spray was aware of Wave's pioneering product and decided to copy its formula, trademark, trade dress, and marketing strategy. Such willful infringement will give rise to liability for treble damages and attorneys' fees, as well as an injunction against further infringement.  *See, e.g.*, 15 U.S.C. § 1117(a); 15 U.S.C. § 1116(a); Cal. Bus. & Prof. Code § 17200, *et seq*.  And while it is inconceivable that Ocean Spray was unaware of Wave Soda when it launched the infringing products, Wave will be entitled to obtain disgorgement of Ocean Spray's profits on the Infringing Products without needing to prove willfulness.  *See Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. ___, 140 S. Ct. 1492 (2020).

While Wave would prefer to reach an amicable resolution to this dispute, it cannot tolerate willful infringement of its trademark and trade dress and the swamping of its brand

**EXHIBIT 3**
**Page 14**

identity; nor will it sit back and wait as Ocean Spray seeks to expand into new retail outlets and launch more Infringing Products. Thus, there is a limited opportunity open to the parties to discuss a path forward that does not include a court order barring Ocean Spray from continuing to market and sell the Infringing Products altogether.

Please let us know by no later than Tuesday, April 20, 2021, whether Ocean Spray will agree to modify its packaging for the Infringing Products to remove the prominent "WAVE" mark from its packaging and marketing materials. Our client would be willing to consider a sell-through of a portion of Ocean Spray's existing inventory at Walmart and Sam's Club as part of a negotiated resolution, but cannot permit Ocean Spray to produce any more Infringing Product or expand those productions into new retail channels. Unless the parties can reach a mutually satisfactory resolution, Wave intends to file suit to remedy Ocean Spray's infringement in the United States District Court for the Southern District of California.

Meanwhile, please confirm that Ocean Spray and its affiliates will promptly institute a document preservation and litigation hold on all documents, things, and electronically stored information related to the Infringing Products, Wave Soda, the NEW WAVE® trademark, Wave and its products or this dispute, including but not limited to communications and other information on email accounts, cell phones, chat applications, cloud storage devices and other repositories.

Sincerely,

Andrew Levine

Andrew Levine

**EXHIBIT 3**
**Page 15**

# EXHIBIT 4

**EXHIBIT 4**
**Page 16**

| | |
|---|---|
| **From:** | Andrew Levine |
| **To:** | Julia Anne Matheson; Toby Rowe |
| **Cc:** | Janet Satterthwaite; John Snyder |
| **Subject:** | RE: Ocean Spray Cranberries, Inc. v. Wedge Water, LLC (FW: Activity in Case 1:21-cv-10669) |
| **Date:** | Thursday, April 22, 2021 3:34:39 PM |
| **Attachments:** | image002.png |
| | image004.png |

Ms. Matheson –

I am surprised to receive the email below and notice of Ocean Spray's anticipatory filing in response to our April 9, 2021 letter, given your response, which stated "Ocean Spray has no interest in litigating this matter" unless Wave Soda were to "commence litigation."  The filing of a strike suit to front run Wave Soda's complaint is improper. *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (Wolf, J.). Putting aside the impropriety of the filing, which was clearly designed to bully a smaller competitor and burden it with motion practice in Massachusetts, we obviously disagree with the allegations in the complaint, many of which are demonstrably false, and will respond accordingly.

We will waive service with all rights reserved.

Regards,
Andrew

Andrew Levine
B R A U N **H A G E Y** & B O R D E N  L L P
Direct:  (415) 599-0207

**From:** Julia Anne Matheson <jmatheson@potomaclaw.com>
**Sent:** Thursday, April 22, 2021 8:59 AM
**To:** Andrew Levine <levine@braunhagey.com>
**Cc:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>; John Snyder <jsnyder@potomaclaw.com>
**Subject:** Ocean Spray Cranberries, Inc. v. Wedge Water, LLC (FW: Activity in Case 1:21-cv-10669)

**\*\*\* EXTERNAL MESSAGE \*\*\***

Via email to:  levine@braunhagey.com
Via Overnight Mail

Dear Mr. Levine:

**EXHIBIT 4**
**Page 17**

Having had no response to our April 20, 2021 letter sent to you via email on April 20, 2021 and again via email and fax on April 21, 2021, we enclose a courtesy copy of the DJ Complaint, Civil Cover Sheet, and accompanying forms we filed this morning with the District Court of Massachusetts in the parties' dispute.

We also enclose a Notice of Lawsuit and Request to Waive Service and Waiver of Service Form. Please let us know if you are willing to accept service on your client's behalf or, alternatively, to waive service.

We look forward to hearing from you and thank you in advance for your courtesy.

**Julia Anne Matheson** | Partner | Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW Suite 700
Washington, D.C.
Tel: (202) 251-6920  | Fax: (202) 318-7707
jmatheson@potomaclaw.com | www.potomaclaw.com








**EXHIBIT 4**
**Page 18**

# EXHIBIT 5

EXHIBIT 5
Page 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

OCEAN SPRAY CRANBERRIES, INC.,

               Plaintiff,

v.

WEDGE WATER, LLC D/B/A WAVE SODA,

               Defendant.

C.A. No. 1:21-cv-10669-MLW

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

Dated:  May 3, 2021

Respectfully Submitted,

WEDGE WATER, LLC
D/B/A WAVE SODA,

*By its attorneys*,

Keith Toms (BBO# 663369)
Alexander T. Hornat (BBO# 687588)
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Phone: 617-449-6500
ktoms@mccarter.com
ahornat@mccarter.com

Andrew Levine (*pro hac vice pending*)
J. Tobias Rowe (*pro hac vice pending*)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Phone: 415-599-0210
levine@braunhagey.com
rowe@braunhagey.com

**EXHIBIT 5**
**Page 20**

## **TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................... iii

I.  INTRODUCTION ...................................................................................... 1

II.  BACKGROUND ........................................................................................ 3

    A.  Wave Discovers Ocean Spray's Infringement, Sends a Cease-and-Desist Letter, and Engages in Good-Faith Settlement Negotiations .......... 3

    B.  Ocean Spray Aborts Settlement Discussions by Hastily Filing a Complaint; Wave Sues in California ........................................................ 4

    C.  Wave and Ocean Spray Operate Extensively in California; Wave Has Virtually No Ties to Massachusetts ................................................... 5

    D.  Wave Requested the Ocean Spray Agree to Transfer this Action Prior to Filing this Motion Spray Refused ................................................ 7

III.  ARGUMENT ............................................................................................. 7

    A.  The First Filed Rule Must be Disregarded Where, As Here, There are Special Circumstances ......................................................................... 8

    B.  Because Public Policy Promotes Extrajudicial Dispute Resolution, the Court Should Not Condone Ocean Spray Misleading Wave in Its Sprint to The Courthouse .................................................................... 9

        1.  Ocean Spray Misled Wave Regarding Its Intentions and Then Raced to the Courthouse ....................................................... 10

        2.  Ocean Spray's Request for Declaratory Relief Only Makes Plain that this Action Is a Preemptive Strike ............................... 13

    C.  The Balance of Convenience and Public Interest Substantially Favor Transfer to California ................................................................... 14

        1.  Ocean Spray's Choice of Forum Is Not Afforded Much, If Any, Weight Because It Misled Wave and Sprinted to the Courthouse ..................................................................................... 15

        2.  The Parties Are in California ....................................................... 16

        3.  Key Witnesses and Documents Are in California ........................ 17

i

**EXHIBIT 5**
**Page 21**

4.      The Center of Gravity for This Case is Business Activity in the Southern District of California................................................ 17

5.      California Law Must Be Applied First in This Trademark Dispute ........................................................................................ 18

6.      The Public Interest Also Favors the California Forum ................. 18

IV.    CONCLUSION.................................................................................................. 19

ii

**EXHIBIT 5**
**Page 22**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*Biogen, Inc. v. Schering AG*,

    954 F. Supp. 391 (D. Mass. 1996) ................................................................................... 2, 9, 15

*Biolitec, Inc v. Angiodynamics, Inc.*,

    581 F. Supp. 2d 152 (D. Mass. 2008) ..................................................................................... 9, 14

*Braintree Labs., Inc. v. Bedrock Logistics, LLC*,

    No. 16-11936-IT, 2016 WL 7173755 (D. Mass. Dec. 8, 2016) ................................................ 13

*Brant Point Corp. v. Poetzsch*,

    671 F. Supp. 2 (D. Mass. 1987) ................................................................................................ 17

*Cianbro Corp. v. Curran-Lavoie, Inc.*,

    814 F.2d 7 (1st Cir. 1987) ........................................................................................................... 8

*Codex Corp. v. Milgo Elec. Corp.*,

    553 F.2d 735 (1st Cir. 1977) ....................................................................................................... 9

*Comfort v. Lynn Sch. Comm.*,

    150 F. Supp. 2d 285 (D. Mass. 2001) ...................................................................................... 14

*Davox Corp. v. Digital Sys. Int'l, Inc.*,

    846 F. Supp. 144 (D. Mass. 1993) .................................................................................... passim

*DePianti v. Jan-Pro Franchising Int'l, Inc.*,

    No. 08-10663-MLW, 2016 WL 4771056 (D. Mass. Sep. 13, 2016) ........................................ 18

*Dorpan v. Hotel Meliá, Inc.*,

    728 F.3d 55 (1st Cir. 2013) ....................................................................................................... 18

*Dress v. Capital One Bank (USA)*,

    368 F. Supp. 3d 178 (D. Mass. 2019) ...................................................................................... 15

*Dupont Pharmaceuticals Co. v. Sonus Pharms., Inc.*,

    122 F. Supp. 2d 230 (D. Mass. 2000) ................................................................................. 15, 18

*Edvisors Network, Inc. v. Educational Advisors, Inc.*,

    755 F. Supp. 2d 272 (D. Mass. 2010) .................................................................................. 6, 17

*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*,

    No. 12-10551-NMG, 2012 WL 12941889 (D. Mass. Sept. 28, 2012) ................................ 2, 10

*Flood v. Carlson Restaurants, Inc.*,

    94 F. Supp. 3d 572 (S.D.N.Y. 2015) ........................................................................................ 16

*Genentech, Inc. v. Eli Lilly and Co.*,

    998 F. 2d 931 (Fed. Cir. 1993) ................................................................................................. 15

*Hilliard v. Credit Suisse First Bos. LLC*,

    No. 8:06CV285, 2006 WL 2239014 (D. Neb. Aug. 3, 2006) .................................................. 13

*Hilsley v. Ocean Spray Cranberries, Inc.*,

    No. 3:17-cv-02335-GPC-MDD, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018) ................. 6, 16

*Johnson v. N.Y. Life Ins. Co.*,

    No. 12-cv-11026, 2013 WL 1003432 (D. Mass. 2013) ........................................................... 15

*Kleinerman v. Luxtron Corp.*,

    107 F. Supp. 2d 122 (D. Mass. 2000) ............................................................................ 2, 11, 14

iii

**EXHIBIT 5**
**Page 23**

*Major v. Ocean Spray Cranberries, Inc.*,
No. 5:12-CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013) ........................... 6, 16
*Mercier v. Sheraton Int'l, Inc.*,
981 F.2d 1345 (1st Cir. 1992) .................................................................................................... 18
*N.E. Cord Blood Bank, Inc. v. Alpha Cord, Inc.*,
No. 03-11662-GAO, 2004 WL 222357 (D. Mass. Jan. 21, 2004).................................... 13, 14
*OsComp Sys., Inc. v. Bakken Exp., LLC*,
930 F. Supp. 2d 261 (D. Mass. 2013) ........................................................................................ 13
*Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*,
196 F. Supp. 3d 123 (D. Mass. 2016) ..................................................................................... 5, 6
*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)..................................................................................................................... 18
*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
642 F. Supp. 2d 1112 (C.D. Cal. 2009) ......................................................................... 7, 16, 17
*Sustainable Low Maint. Grass, LLC v. Cutting Edge Solutions, LLC*,
No. 14-CV-11894-IT, 2014 WL 4656627 (D. Mass. Sep. 15, 2014) ...................................... 11
*Van Dusen v. Barrack*,
376 U.S. 612 (1964)........................................................................................................................ 8
*Veryfine Prods., Inc. v. PHLO Corp.*,
124 F. Supp. 2d 16 (D. Mass. 2000) ....................................................................................... 2, 9

## **STATUTES**

15 U.S.C. § 1064.............................................................................................................................. 14
15 U.S.C. § 1119.............................................................................................................................. 14
28 U.S.C. § 1404.....................................................................................................................  passim
28 U.S.C. § 1631................................................................................................................................ 5
28 U.S.C. § 2201.............................................................................................................................. 18

## **RULES**

Federal Rule of Evidence 201 ........................................................................................................ 6

iv

**EXHIBIT 5**
**Page 24**

## I.     INTRODUCTION

Wedge Water LLC, D/B/A Wave Soda ("Wave") is an innovative start-up based in San Marcos, California, that pioneered a new better-for-you soda by combining sparkling water, fruit juice, and a small amount of caffeine into healthier and tastier soda alternative. Wave owns the NEW WAVE® trademark and related common law rights. It defends its rights against others in the increasingly competitive better-for-you soda market.

Wave recently discovered that Ocean Spray Cranberries, Inc. ("Ocean Spray"), one of the largest beverage companies in the world, is selling and marketing a copycat product called Ocean Spray "WAVE." Wave contacted Ocean Spray and asked that it cease and desist from using "WAVE" to market its products. Wave invited settlement discussions with Ocean Spray but noted it would file suit "[u]nless the parties can reach a mutually satisfactory resolution[.]"

Ocean Spray's counsel responded, stating that it "has no interest in litigating this matter," but "should [Wave] commence litigation, our client would be forced to counterclaim[.]" Two days later, without waiting for Wave to respond or confirm receipt of Ocean Spray's letter, Ocean Spray hastily filed this declaratory judgment action.  A day later, Wave – the true plaintiff in this matter – filed suit in the Southern District of California for damages and injunctive relief.

This case and the California case are mirror images – both require a determination of Wave's claims that Ocean Spray is infringing Wave's trademark rights by marketing and selling "Ocean Spray WAVE" in nearly identical packaging. Ocean Spray's declaratory judgment complaint, filed after misleading Wave, is a quintessential race to courthouse and undermines the policy interest in encouraging pre-suit settlement negotiations. Under the settled law of this Circuit, this action should be transferred to Wave's chosen forum.

*First*, under nearly identical circumstances, this Court and others in this District and Circuit have found that forum-shopping and deception of the kind Ocean Spray engaged in here

1

**EXHIBIT 5**
**Page 25**

warrants transfer of this action to the true plaintiff's chosen forum. *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (Wolf, J.).[1]

*Second*, this case should be transferred because California is more convenient for the parties and witnesses, because the harm to Wave took place there, and because the majority of relevant evidence is located there. California is convenient for Ocean Spray too. Ocean Spray regularly transacts business and litigates in California. Massachusetts, on the other hand, has little connection to this suit. Wave has no employees or operations there. As the true plaintiff and aggrieved party, Wave's choice of venue should be given greater weight.

*Third*, the public-interest factors, particularly the imperative not to further congest federal courts with identical proceedings or reward procedural gamesmanship, weigh in favor of transfer to California, where this dispute can be adjudicated comprehensively.

---

[1] *See also Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. 12-10551-NMG, 2012 WL 12941889, at *6 (D. Mass. Sept. 28, 2012) ("Special circumstances rebut the first-filed presumption where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day. ...... In such situations, the plaintiff's first-filed suit is clearly motivated by the plaintiff's desire to secure the best forum and deference to a later-filed action may be appropriate.") (internal quotation marks and alterations omitted), *report and recommendation* adopted, 2012 WL 13059891 (D. Mass. Nov. 21, 2012); *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000) ("This Court is persuaded that in patent infringement cases, where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and that the "first-filed rule" will not be dispositive."); *Veryfine Prods., Inc. v. PHLO Corp.*, 124 F. Supp. 2d 16, 23 (D. Mass. 2000) ("When ...... *there is no false implication that a party will refrain from litigation during those negotiations*, the first-filed presumption may remain intact.") (emphasis added); *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 399 (D. Mass. 1996) (Wolf, J.) (declining to transfer because plaintiff did not act "for the purpose of lulling defendants into delaying suit so [it] could sue first").

2

**EXHIBIT 5**
**Page 26**

## II.    BACKGROUND

Wave is a rapidly-growing beverage company based in San Marcos, California. Declaration of Andrew Levine ("Levine Decl."), Ex. 1 ("Wave Compl.") ¶ 17. It was founded in 2016 by Nat Noone, a beverage industry veteran and self-described soda fanatic who wanted to offer consumers a healthier, tastier alternative to sugary drinks and bland seltzers. *Id.* Wave pioneered an entirely new product category by launching Wave Soda, which combines simple ingredients – sparkling water, fruit juice, and a small amount of caffeine – into a soda alternative that is healthier and tastier than traditional sugary sodas and sparkling waters. *Id.* ¶ 19.  Wave has since been heralded as a brand on the rise by the news media and industry press, including being named one of the "Best Healthy Sodas" by *Shape* Magazine and winning *Beverage Digest's* "Best Packaging and Label Design" award in 2020. *Id.* ¶ 21.

Wave has continuously used its federally-registered trademark NEW WAVE® in International Class 32 (U.S. Reg. No. 5571632) and related common law trademark and other trade dress and intellectual property rights related to Wave Soda to distinguish itself from the competition. *Id.* at ¶¶ 24, 26. Wave diligently developed and protects the Wave Soda brand and NEW WAVE® and WAVE trademarks, along with related intellectual property related to Wave Soda. *Id.* ¶ 23.

### A.    Wave Discovers Ocean Spray's Infringement, Sends a Cease-and-Desist Letter, and Engages in Good-Faith Settlement Negotiations

Wave recently learned that Ocean Spray has launched for sale and begun marketing a confusingly similar line of sparkling beverage products called "Ocean Spray WAVE" *Id.* ¶ 32. On April 9, 2021, Wave sent a cease-and-desist letter to Ocean Spray's President, CEO and General Counsel, warning that Ocean Spray was infringing Wave's trademark and trade dress rights. Levine Decl., Ex. 2, at 1.  Wave requested that Ocean Spray agree to modify its packaging

3

**EXHIBIT 5**
**Page 27**

for the infringing products to remove the prominent "WAVE" mark from its packaging and marketing materials. *Id.* at 5. Wave advised Ocean Spray that while it hoped for an "amicable resolution to this dispute" if the parties could not "reach a mutually satisfactory resolution, Wave intends to file suit to remedy Ocean Spray's infringement in the United States District Court for the Southern District of California." *Id.* at 5.

On April 20, 2021, Ocean Spray's counsel responded, acknowledged Wave's intention to sue in the Southern District of California and expressly disclaimed any interest in litigation:

> You [*sic*] letter also implies that you intend to seek a court order absent prompt and total capitulation by Ocean Spray. ......**While Ocean Spray has no interest in litigating this matter, should you commence litigation, our client would be forced to counterclaim, at the very least, to cancel your client's registration based on our client's prior rights.**

*Id.,* Ex. 3 at 4 (emphasis added). On April 21, Ocean Spray asked Wave to confirm receipt of its letter. *Id.*, Ex. 4. It did not wait for a response before racing to file action.

### B.   Ocean Spray Aborts Settlement Discussions by Hastily Filing a Complaint; Wave Sues in California

On the morning of April 22, 2021, less than 48 hours after it misled Wave by representing that Ocean Spray had "no interest in litigating this matter" and would not file suit unless Wave "commence[ed] litigation[,] Ocean Spray filed this declaratory judgment action seeking to invalidate Wave's trademark rights. Dkt. 1. Later than morning at 9 a.m. Pacific Time, Ocean Spray's counsel emailed Wave's counsel the complaint. Levine Decl., Ex. 5, at 1.

Wave's counsel responded that day:

> I am surprised to receive the email below and notice of Ocean Spray's anticipatory filing in response to our April 9, 2021 letter, given your response, which stated "Ocean Spray has no interest in litigating this matter" unless Wave Soda were to "commence litigation." The filing of a strike suit to front run Wave Soda's complaint is improper. *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (Wolf, J.). Putting aside the impropriety of the filing, which was clearly designed to bully a smaller competitor and burden it with motion practice in Massachusetts, we obviously disagree with the allegations in

4

**EXHIBIT 5**

**Page 28**

the complaint, many of which are demonstrably false, and will respond accordingly.

*Id.*, Ex. 6.

Wave filed its complaint against Ocean Spray the next day, April 23, 2021, in the Southern District of California, just as it had indicated it would in its April 9, 2021 letter. Wave seeks damages, injunctive relief and other relief for Ocean Spray's Trademark Infringement, False Designation of Origin, Trade Dress Infringement, Trademark Infringement under California Common Law, Unfair Competition under the California Business and Professional Code, Cancellation of Registration, and for Declaratory Judgment of Infringement, seeking damages, injunctive and other relief. *Id.*, Ex. 1.

### C. Wave and Ocean Spray Operate Extensively in California; Wave Has Virtually No Ties to Massachusetts

Wave is a start-up with fewer than ten employees, all of whom reside and work in California. It would be tremendously burdensome and inconvenient for Wave to be forced to litigate in Massachusetts. Declaration of Nat Noone ("Noone Decl.") ¶ 7. Wave and its co-founders and employees have no connections to Massachusetts.[2] *Id.* ¶¶ 3-7. Wave has no employees or operations in Massachusetts aside from a tiny percentage of Wave's overall sales in the state. *Id.* ¶ 5. It has never sourced ingredients from nor manufactured its product there. *Id.*

---

[2] "28 U.S.C. § 1631 allows transfer when a court lacks personal jurisdiction. A court can *sua sponte* order transfer under 28 U.S.C. § 1631, which states, in relevant part, where the 'court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought.'" *Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*, 196 F. Supp. 3d 123, 133 (D. Mass. 2016) (quoting 28 U.S.C. § 1631) (internal citations omitted). Although transfer is warranted based on Ocean Spray's violating public policy, Wave requests transfer pursuant to Section 1631 in the alternative.

5

**EXHIBIT 5**
**Page 29**

¶ 6.  Wave's first sale in Massachusetts occurred in November 2020. *Id.* ¶ 5.  Wave's sales in Massachusetts account for less than 0.3% of its total sales. *Id*.

By contrast, Wave's operations and the vast majority of Wave's sales occur in California. *Id.* ¶ 4.  Wave is headquartered in and has its sole office in San Marcos, California. *Id.* ¶ 3.  All of Wave's employees live and work in California (all but one in San Diego County). *Id.* All documents and records related to Wave's trademarks and business are kept in San Diego County. *Id.* Wave's sales to California represent more than 30% of its total sales. *Id.* ¶ 4. And Wave suffered and continues to suffer harm from Ocean Spray's infringement in California.[3]

Ocean Spray, on the other hand, is a billion-dollar beverage company with a significant presence in California, Wave's chosen forum. It has affirmatively established and maintained contacts with the State of California and is registered with the California Secretary of State to do business in California as entity number C2082649.[4] Levine Decl., Ex. 7. Ocean Spray sells its products, including the infringing products that are at the heart of this dispute, throughout California. And it routinely litigates matters in California District Courts. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-02335-GPC-MDD, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018) (certifying class of California consumers who purchased any of 12 specified Ocean Spray juices in food labeling lawsuit); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-

_____

[3] *Edvisors Network, Inc. v. Educational Advisors, Inc.*, 755 F.Supp.2d 272, 284 (D. Mass. 2010) ("Courts in this jurisdiction have determined that trademark infringement, like libel, involves conduct that is purposefully directed at the state in which the trademark owner is located.").

[4] Wave respectfully requests that the Court take judicial notice of the fact of Ocean Spray's registration with the California Secretary of State. pursuant to Federal Rule of Evidence 201.

CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112 (C.D. Cal. 2009).

**D.** **Wave Requested that Ocean Spray Agree to Transfer this Action Prior to Filing this Motion; Spray Refused**

On the same day Ocean Spray filed this action, Wave put Ocean Spray on notice that this action was an improper forum-shopping exercise clearly designed to bully a smaller competitor and burden it with motion practice in Massachusetts. Levine Decl., Ex. 6. On May 2, 2021, Wave again requested that Ocean Spray dismiss this action and refile its complaint as a counter-complaint in the Southern District of California. *Id.*, Ex. 8, at 1. Ocean Spray again refused.

Rather than litigate this dispute on merits, Ocean Spray appears intent to use its size and resources to delay adjudication of its infringement, including by seeking a stay of discovery in California pending this Court's determination of Wave's motion to transfer. *Id.* at 1-2. Ocean Spray's conduct has already caused consumer confusion and irreparable harm to Wave's brand and business reputation. A prompt adjudication on the instant motion is therefore necessary to prevent further irreparable harm to Wave, while Ocean Spray expands its marketing and sales of the infringing Ocean Spray WAVE product.

**III. ARGUMENT**

Wave is the true plaintiff in this case, and it deserves to have its choice of venue in California respected. Under blackletter law of this Circuit, Wave should not be hauled into court in Massachusetts because Ocean Spray raced to the courthouse after misrepresenting otherwise to Wave. As this Court decided in *Davox Corp. v. Digital Systems International, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993), an alleged infringer "should not be permitted to take advantage of the fact that [an aggrieved party] responsibly deferred filing potentially protracted and

7

**EXHIBIT 5**
**Page 31**

expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [the infringer's] response to its letters."

Furthermore, the convenience of the parties and public-interest considerations weigh strongly in favor of transfer. Wave is a California based start-up with no offices, employees, or significant operations in Massachusetts. All of its employees are based on California, where the infringement occurred, the injury is primarily suffered and much of the evidence exists.  It would be tremendously burdensome and inconvenient for Wave to be forced to litigate in Massachusetts. California is *also* convenient for Ocean Spray because it has affirmatively established and maintained contacts with the State of California, is registered to do business in California, sells its products in California and routinely litigates matters in California.

This Court should exercise its power under 28 U.S.C. § 1404(a) to "transfer [this] civil action to any other district or division where it might have been brought" when it is for "the convenience of parties and witnesses, [and] in the interest of justice." Transfer will promote the important policy of "prevent[ing] the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotations omitted).

Transferring the case will respect Wave's choice of forum as the true plaintiff in this matter, promote good faith settlement efforts, disincentivize Ocean Spray's procedural gamesmanship, and facilitate the efficient and comprehensive adjudication of this dispute.

### A.      The First Filed Rule Must be Disregarded Where, As Here, There are Special Circumstances

"Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is *generally preferred* in a choice-of-venue decision."  *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.

EXHIBIT 5
Page 32

1987) (emphasis added). But the first-filed rule does not operate formalistically, particularly in circumstances where a putative defendant rushes to deprive the natural plaintiff of its chosen venue. *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977).

There are at least two well-established exceptions in this Circuit that compel courts to disregard the "first-filed rule" and send cases to the venue where they belong: (1) where there are "special circumstances" justifying the cases being heard in the second forum, such as where the party bringing the first-filed action engaged in misleading conduct in order to prevail in a preemptive race to the courthouse; and (2) where the balance of convenience substantially favors the second-filed action. *Biolitec, Inc v. Angiodynamics, Inc.*, 581 F. Supp. 2d 152, 158 (D. Mass. 2008). Ocean Spray's complaint raises both exceptions.

### B. Because Public Policy Promotes Extrajudicial Dispute Resolution, the Court Should Not Condone Ocean Spray Misleading Wave in Its Sprint to The Courthouse

Complaints filed shortly after a party communicates its intention to sue are indicative of a race to the courthouse, which has a chilling effect on constructive settlement discussions. Moreover, claims for declaratory judgments (rather than for damages or injunctions) indicate an attempt at "procedural fencing" to secure a more favorable forum and deprive the injured party of its preference. Thus, "special circumstances" to deviate from the first-filed rule include situations where the true plaintiff responsibly deferred filing potentially protracted and expensive litigation because it was misled into believing it would not be prejudiced by the other side's response to its cease-and-desist letter, *Davox*, 846 F. Supp. at 148-49; where a misrepresentation was intentionally made with the purpose of lulling the true plaintiff into delaying suit so the other side could sue first, *see Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 399 (D. Mass. 1996) (Wolf, J.); or where there was a false implication by a party that it will refrain from filing litigation. *See Veryfine Prods., Inc. v. PHLO Corp.*, 124 F. Supp. 2d 16, 23 (D. Mass. 2000)

9

**EXHIBIT 5**
**Page 33**

("*When . . . there is no false implication that a party will refrain from litigation during those negotiations*, the first-filed presumption may remain intact.") (emphasis added). To hold otherwise would be to punish a party for focusing on settlement negotiation, which would violate the well-established public policy encouraging out-of-court settlement.

Ocean Spray's complaint is textbook forum shopping that raises both exceptions set forth in the law of this Circuit. Rewarding Ocean Spray's dash to the courthouse by allowing it to usurp the natural plaintiff's choice of forum for a less convenient forum would undermine good faith settlement negotiations and encourage procedural gamesmanship. For that reason alone, this case should be transferred to the Southern District of California.

### 1. Ocean Spray Misled Wave Regarding Its Intentions and Then Raced to the Courthouse

Ocean Spray filed suit less than two weeks after Wave provided Ocean Spray with notice of its infringement and Wave's intention to sue should the parties not reach an amicable settlement, and *just two days after Ocean Spray misled Wave that it did not intend to sue*. Ocean Spray's rushed and hastily drafted complaint is quintessential pre-emptive strike warranting deviation from the first-filed rule.

> Special circumstances rebut the first-filed presumption where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day. ....... In such situations, the plaintiff's first-filed suit is clearly motivated by the plaintiff's desire to secure the best forum and deference to a later-filed action may be appropriate.

*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. CV 12-10551-NMG, 2012 WL 12941889, at *6 (D. Mass. Sept. 28, 2012) (internal quotation marks and

alterations omitted), *report and recommendation* adopted, 2012 WL 13059891 (D. Mass. Nov. 21, 2012).[5]

Here, shortly after Wave noticed Ocean Spray's infringement, it sent a demand letter. Levine Decl., Ex. 2, at 1-3. Wave indicated it was open to a commercial resolution but advised that, if the parties were unable to reach a resolution, Wave was prepared to file suit in the Southern District of California. *Id.* at 3. This is exactly what "the sound policy of promoting extrajudicial dispute resolution" calls for. *Davox*, 846 F. Supp. at 148.

Ocean Spray took advantage of that policy. In order to delay Wave from taking legal action, Ocean Spray intentionally misrepresented that it would not file, so that Ocean Spray could hastily prepare its Complaint and rush to the court house without giving Wave any notice. Levine Decl., Ex. 3, at 4. This is the precise misconduct that policy is designed to discourage and punish. *Sustainable Low Maint. Grass, LLC v. Cutting Edge Solutions, LLC*, No. 14-CV-11894-IT, 2014 WL 4656627, at *5 (D. Mass. Sep. 15, 2014) ("In light of these facts, maintaining the instant action would cut against promoting settlement negotiations and avoiding races to the courthouse. Even when construing all the facts in the light most favorable to [plaintiff], it would be inequitable to reward [plaintiff] by maintaining this action in its preferred forum").

---

[5] *See also Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000). ("where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and … the 'first-filed rule" will not be dispositive.'").

11

**EXHIBIT 5**
**Page 35**

In *Davox* – again, a case on all fours with the present factual circumstances – a patent owner sent two letters to infringer alleging infringement and inviting negotiations to avert litigation. 846 F. Supp. at 146. The infringer responded with a letter denying claims, saying its outside patent counsel would respond regarding discussions. *Id.* Instead of responding, the infringer filed a complaint for declaratory judgment one month later in the District of Massachusetts. *Id.* The next day, the patent owner filed suit in the Western District of Washington. *Id.* at 147. This Court declined to exercise jurisdiction over the complaint and transferred the entire case, including the infringer's own infringement claims, to the Western District of Washington, holding:

> This court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources ....... Here, [Plaintiff] should not be permitted to take advantage of the fact that [Defendant] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [Plaintiff]'s responses to its letters.

*Id.* at 148. This Court found it significant that, as here, the original cease-and-desist letter expressly held out the possibility of negotiations (*compare id. with* Levine Decl., Ex. 2, at 5), and the infringer's response misled the patent owner into believing discussions were ongoing. *Compare Davox*, 846 F. Supp. 144 n.2 *with* Levine Decl., Ex. 3, at 4.

The facts here are even more egregious.  In response to a letter in which Wave indicated that if the parties could not reach an amicable resolution, it would file a complaint in the Southern District of California, Ocean Spray responded it had no interest in litigation unless Wave filed first. Levine Decl., Ex. 2, at 5; Ex. 3, at 4. Less than 48 hours later, without notice, Ocean Spray filed the declaratory judgment complaint in this action. *Id.*, Ex. 4. This is a quintessential example of misleading the true plaintiff to effectuate forum-shopping.

12

**EXHIBIT 5**
**Page 36**

Rewarding Ocean Spray's misrepresentation by allowing it to win a preemptive race to the courthouse and to usurp the natural plaintiff's choice of forum would undermine good faith settlement negotiations and encourage procedural gamesmanship. *Davox*, 846 F. Supp. at 148-49. For that reason alone, this case should be transferred to the Southern District of California.

> **2.      Ocean Spray's Request for Declaratory Relief Only Makes Plain that this Action Is a Preemptive Strike**

Claims for declaratory judgment (rather than for damages or injunctions) can indicate an attempt at "procedural fencing" to secure a more favorable forum and deprive the injured party of its preference. *Braintree Labs., Inc. v. Bedrock Logistics, LLC*, No. 16-11936-IT, 2016 WL 7173755, at *2 (D. Mass. Dec. 8, 2016) ("[First-filed plaintiff] thus appears implicated in the 'procedural fencing' that militates against application of the 'first-filed rule.' The rule is not intended to provide defendants first threatened in one district refuge in another."); *OsComp Sys., Inc. v. Bakken Exp., LLC*, 930 F. Supp. 2d 261, 274 (D. Mass. 2013) (first-filed rule should not apply "where a party engages in procedural fencing in order to preempt the other party's potential lawsuit against it") (internal quotations and alterations omitted). Thus, courts in this District have recognized that declaratory actions may be more indicative of a preemptive strike than a legitimate pursuit of justice. *E.g.*, *N.E. Cord Blood Bank, Inc. v. Alpha Cord, Inc.*, No. 03-11662-GAO, 2004 WL 222357, at *3 (D. Mass. Jan. 21, 2004) (giving priority to second-filed action because first-filed action primarily sought declaratory judgment). Moreover, the pleading of non-declaratory claims in addition to a declaratory claim does not negate this exception. *See id.*; *see also Hilliard v. Credit Suisse First Bos. LLC*, No. 8:06CV285, 2006 WL 2239014, at *4 (D. Neb. Aug. 3, 2006) (interpreting *Alpha Cord* and noting: "To hold that the pleading of non-declaratory claims, in addition to a declaratory claim, automatically prevents the . . . exception to the first-filed rule would enable parties to circumvent a natural plaintiff's choice of venue merely

13

**EXHIBIT 5**
**Page 37**

by attaching closely-related non-declaratory claims to a primary declaratory claim. Such a rigid interpretation would not be in the interests of justice.").

Here, Ocean Spray's self-styled "DJ Complaint" includes only three claims, one for declaratory judgment and two closely-related counts for cancellation under 15 U.S.C. §§ 1064 and 1119 – which just two days earlier, Ocean Spray had threatened it "would be forced to [bring as] counterclaim[s]" should Wave "commence litigation." (Levine Decl., Ex. 1, at 3.) Ocean Spray makes no showing that a declaratory judgment would serve the traditional purposes of the Declaratory Judgment Act; that is, to minimize the accrual of damages or afford one threatened with liability an early adjudication. *See Comfort v. Lynn Sch. Comm.*, 150 F. Supp. 2d 285, 302 n.39 (D. Mass. 2001). Ocean Spray fails to identify any loss it has suffered and provides no evidence that Wave intended to delay legal action while damages unnecessarily accrued. In fact, Ocean Spray does not even allege that *any* damages have accrued at all. First Circuit courts dismiss or transfer declaratory judgment claims like this as a matter of course where the claims were brought as a preemptive strike and not for a legitimate purpose under the Declaratory Judgment Act. *See, e.g.*, *Alpha Cord*, 2004 WL 222357 at *3.

### C. The Balance of Convenience and Public Interest Substantially Favor Transfer to California

When evaluating a motion to transfer under 28 U.S.C. § 1404(a), courts in this District also consider convenience, fairness, and the interests of justice on a case-by-case basis, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of witnesses and location of documents; (4) any connection between the forum and the issues; (5) the law to be applied; and (6) the public interest at stake. *Kleinerman*, 107 F. Supp. 2d at 125; *Biolitec*, 581 F. Supp. 2d at 158 (noting that balance of convenience justifies cases being heard in second forum).

14

EXHIBIT 5
Page 38

This decision is firmly within the Court's discretion. *E.g.*, *Biogen*, 954 F. Supp. at 398 (quoting *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993) ("Exceptions [to the first-filed rule] are not rare, and are made when justice or expediency requires, as in any issue of choice of forum.").  The court's "discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interest are best served." *Id.* "Factors to be considered in exercising this discretion include judicial and litigant economy, the just and effective disposition of disputes, the possible absence of jurisdiction over all necessary and desirable parties, as well as a balancing of conveniences that may favor the second forum." *Dupont Pharmaceuticals Co. v. Sonus Pharms., Inc.*, 122 F. Supp. 2d 230, 231 (D. Mass. 2000) (citing *id.*).

Here, an objective assessment of the relative convenience of the parties, witnesses, and third-parties, as well as the location of the bulk of the evidence and the location where the harm against Wave occurred leads to only one conclusion: this case should be adjudicated in California. If Ocean Spray wishes to enjoy the literal fruits of doing business in California, it should be subject to California jurisdiction as well.

### 1. Ocean Spray's Choice of Forum Is Not Afforded Much, If Any, Weight Because It Misled Wave and Sprinted to the Courthouse

In direct response to Wave's settlement overtures and statement that it would file suit in California should the parties not reach an amicable resolution, Ocean Spray misled Wave that it had no interest in litigating, only to then rush to file this action across the country. Given such gamesmanship and blatant forum-shopping, "the usual weight given to the plaintiff's choice of forum is not justified. Rather, to give it such weight would abet a form of forum shopping that should not be encouraged." *Johnson v. N.Y. Life Ins. Co.*, No. 12-cv-11026, 2013 WL 1003432, at *3 (D. Mass. 2013); *see also Dress v. Capital One Bank (USA)*, 368 F. Supp. 3d 178, 184 (D.

15

**EXHIBIT 5**
**Page 39**

Mass. 2019) ("Where there is such suspicion of forum shopping, the plaintiff's choice of forum does not have the same weight. This Court can consider the factual circumstances basing the allegations of forum-shopping in determining the weight to give Plaintiff's choice of forum without ruling that Plaintiff did in fact forum shop.") (citing *Flood v. Carlson Restaurants, Inc.*, 94 F.Supp.3d 572, 576 (S.D.N.Y. 2015) ("the more it appears the decision is motivated by forum shopping reasons, the less deference will be accorded to it")). In these circumstances, the true plaintiff's forum should be given more weight.

### 2.    The Parties Are in California

Wave is start-up with fewer than ten employees and little support staff, all of whom reside and work in California. It would be tremendously burdensome and inconvenient for Wave to be forced to litigate in Massachusetts. Noone Decl. ¶ 7.  Ocean Spray is in California as well. It has affirmatively established and maintained contacts with the State of California and is registered with the California Secretary of State to do business in California. Levine Decl., Ex. 6. And Ocean Spray routinely litigates matters in California District Courts. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-02335-GPC-MDD, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018) (certifying class of California consumers who purchased any of 12 specified Ocean Spray juices in food labeling lawsuit); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112 (C.D. Cal. 2009).

On balance, California is a more convenient forum for the parties, whereas Massachusetts is convenient only for Ocean Spray. More importantly, Massachusetts is not convenient for the witnesses whose testimony will be important to determining liability in this case.

16

**EXHIBIT 5**
**Page 40**

### 3.  Key Witnesses and Documents Are in California

Since its founding, Wave has been headquartered in and has its sole office in San Marcos. Noone Decl. ¶ 3. All of Wave's employees, who would be key witnesses regarding Wave's launch, growth, technology, branding, and trademark, live and work in California (all but one in San Diego County). *Id.* All documents and records related to Wave's trademarks and business are kept in San Diego County. *Id.* Wave has no employees or operations in Massachusetts aside from a tiny fraction of its sales—less than 0.3% of total sales. *Id.* ¶ 5. Wave has never sourced ingredients from nor manufactured its product from Massachusetts. *Id.* ¶ 6.

Ocean Spray sells its products, including the infringing products that are at the heart of this dispute, throughout California. When representatives from these California retailers are called as witnesses, they would be beyond the subpoena power of this Court but could be compelled to testify in the California action.

Generally, it is not the convenience of the parties, but rather the convenience of the witnesses that is the most important § 1404(a) factor in considering a motion to transfer venue. *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass. 1987) (collecting cases). Here, all of Wave's employees are located in California, not Massachusetts, and because the employees involved in the origination of Wave's trademark and trade dress are located in California, a California forum is more convenient to most of the expected witnesses in this case.

### 4.  The Center of Gravity for This Case is Business Activity in the Southern District of California

The harm suffered by Wave took place in California and the center of gravity for this case is business activity in the Southern District of California. "Courts in this jurisdiction have determined that trademark infringement, like libel, involves conduct that is purposefully directed at the state in which the trademark owner is located." *Edvisors*, 755 F.Supp.2d at 284.

17

**EXHIBIT 5**
**Page 41**

### 5. California Law Must Be Applied First in This Trademark Dispute

The choice of law analysis also militates transferring this case to California. In this case, before the Court can determine the contours of the parties' rights under federal law, it must first apply California law to determine the contours of the trademark rights that Wave holds under state law. *Dorpan v. Hotel Meliá, Inc.*, 728 F.3d 55, 63 (1st Cir. 2013) (noting that extent of preexisting common law trademark is determined by reference to state law).

### 6. The Public Interest Also Favors the California Forum

Under 28 U.S.C. § 1404(a), the Court must also consider public-interest factors promoting "the interest of justice," such as administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law. *See DePianti v. Jan-Pro Franchising Int'l, Inc.*, No. 08-10663-MLW, 2016 WL 4771056, at *4 (D. Mass. Sep. 13, 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).[6]

_____

Congested courts should not be burdened by adjudicating two identical actions in Massachusetts and California, particularly when the California action is the better venue to comprehensively address the parties' competing claims. *See Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1357 (1st Cir. 1992). And per the most recent Civil Statistical Tables for the Federal

[6] "Aside from the discretion available to depart from the first-filed rule, this Court also has a broad grant of discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), in determining whether to exercise jurisdiction over the plaintiffs' action." *Dupont*, 122 F. Supp.2d at 231

**EXHIBIT 5**
**Page 42**

Judiciary, the Southern District of California is less congested than the District of Massachusetts.[7]

California is the natural venue for this case. Federal courts – congested even in the best of times – are even more backlogged now given the COVID-19 pandemic. They should not be further burdened by two identical matters in two different courthouses. California is the more appropriate and more efficient choice to adjudicate a case with its center of gravity in California, and thus this matter should be transferred.

## IV.    CONCLUSION

For the foregoing reasons, Wave respectfully requests that the Court grant this Motion to Transfer and send this dispute to the Southern District of California.

---

[7] *Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2020*, at Table C-5, STATISTICAL TABLES FOR THE FEDERAL JUDICIARY (Dec. 31, 2020) (showing 2,074 cases and median time interval of 9.1 months for the District of Massachusetts, and 1,850 cases and 6.2 months, respectively, for the Southern District of California).

19

**EXHIBIT 5**
**Page 43**

Dated: May 3, 2021                        Respectfully Submitted,

                                          **WEDGE WATER, LLC**
                                          **D/B/A WAVE SODA,**

                                          *By its attorneys*,

                                          /s/ *Alexander T. Hornat*
                                          Keith Toms (BBO# 663369)
                                          Alexander T. Hornat (BBO# 687588)
                                          McCARTER & ENGLISH, LLP
                                          265 Franklin Street
                                          Boston, MA 02110
                                          Phone: 617-449-6500
                                          ktoms@mccarter.com
                                          ahornat@mccarter.com

                                          Andrew Levine (*pro hac vice pending*)
                                          J. Tobias Rowe (*pro hac vice pending*)
                                          BRAUNHAGEY & BORDEN LLP
                                          351 California Street, 10th Floor
                                          San Francisco, CA 94104
                                          (415) 599-0210
                                          levine@braunhagey.com
                                          rowe@braunhagey.com

### CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of May 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                          /s/ *Alexander T. Hornat*
                                          Alexander T. Hornat

**EXHIBIT 5**
**Page 44**

# EXHIBIT 6

**EXHIBIT 6**
**Page 45**

| | |
|---|---|
| **From:** | Janet Satterthwaite |
| **To:** | Andrew Levine; Toby Rowe; Julia Anne Matheson |
| **Cc:** | Marci Lerner Miller; John Snyder; Gunnar Martz |
| **Subject:** | Re: Wave Soda / Ocean Spray cases |
| **Date:** | Monday, May 3, 2021 6:17:20 AM |
| **Attachments:** | image002.png |
| | image003.png |
| | image010.png |
| | Outlook-tn5g35ff.png |

---

**\*\*\* EXTERNAL MESSAGE \*\*\***

Dear Andrew,

We do not agree with your characterization of this matter, but we do not care to debate the merits with you via email, and will save that for court filings.

If you were planning to seek a preliminary injunction after sending a questionable cease and desist letter to a major brand owner, you should have anticipated a declaratory judgment action, so this is your own doing.

Obviously, we are not going to agree to transfer the case or to provide you with free discovery. It is not appropriate for you to seek a preliminary injunction in California when the Massachusetts court has not yet determined venue, much less to demand discovery before filing.

We believe that both courts would appreciate a thoughtful joint proposal from counsel as to a briefing schedule, but as you are not interested in that, we will do what we need to do in accordance with the rules.

In the meantime, please advise by the end of today when we can expect to receive the signed waiver of service in the Massachusetts matter.  If we do not hear from you, we will assume you are not interested in the extra time afforded by waiver, and we will serve the Complaint on your client's registered agent.

I look forward to hearing from you.

regards,

Janet


**Janet F. Satterthwaite** | Partner/ Chair, Trademark Practice | Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004
Tel: (202) 486-1578 | Fax: (202) 318-7707
jsatterthwaite@potomaclaw.com | www.potomaclaw.com

https://www.potomaclaw.com/professionals-janet-f-satterthwaite

**EXHIBIT 6**
**Page 46**



*This e-mail and any attachments may contain information that is private, confidential, and/or privileged. If you are not the intended recipient, please notify us immediately and destroy all copies of this message and any attachments.*

---

**From:** Andrew Levine <levine@braunhagey.com>
**Sent:** Monday, May 3, 2021 12:38 AM
**To:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>; Toby Rowe <rowe@braunhagey.com>; Julia Anne Matheson <jmatheson@potomaclaw.com>
**Cc:** Marci Lerner Miller <mmiller@potomaclaw.com>; John Snyder <jsnyder@potomaclaw.com>; Gunnar Martz <Martz@braunhagey.com>
**Subject:** RE: Wave Soda / Ocean Spray cases

 **EXTERNAL**

Janet –

We can confirm that Wave intends to file a motion to transfer the Massachusetts case to the Southern District of California.  As I noted in my April 22 email, Oceans Spray deliberately misled Wave into believing that it would not file suit so that Ocean Spray could race to file first and burden its smaller competitor with duplicate actions and unnecessary motion practice.  There is little question that such gamesmanship is not tolerated, whether in Massachusetts or any other District, and that the Massachusetts action will be transferred to California.

Please confirm by no later than 3 p.m. ET/noon PT tomorrow, May 3, 2021, whether Ocean Spray will stipulate to transfer the Massachusetts action to California, where Ocean Spray's declaratory judgment claims may be asserted as counterclaims.

Your threatened motion to stay the California case is equally troubling and shows that Ocean Spray's tactics are designed to delay a finding that it has infringed Wave's trademark and trade dress rights and engaged in unfair competition.  Ocean's Spray's launch of its new, copycat "WAVE" product has already caused consumer confusion and irreparable harm to Wave's brand and business goodwill.  To prevent further irreparable harm, Wave intends to seek expedited discovery in California in aid of a preliminary injunction and reserves its right to seek sanctions should Ocean Spray file a motion to stay the California action.  Any request to stay the California action would be frivolous given the impropriety of your Massachusetts filing and would be  "presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P.  11((1).  We can avoid motion practice on this issue too, if Ocean Spray will agree to provide targeted information directly relevant to Wave's contemplated preliminary injunction motion.  Please let us know by close of business on Tuesday, May 3, 2021, whether Ocean Spray will provide

EXHIBIT 6
Page 47

the following information on an expedited basis:

1. All documents and communications regarding Wave or Wave Soda.
2. Documents sufficient to show when Ocean Spray first began developing its new Ocean Spray WAVE product containing caffeine and sparklingly water (the "Infringing Products").
3. Documents sufficient to show when Ocean Spray began working with Walmart / Sam's Club to develop the Infringing Products.
4. Documents sufficient to show Ocean Spray's timeline/plans for launching the Infringing Products in outlets beyond Walmart / Sam's Club.
5. Documents sufficient to show when Ocean Spray decided to discontinue Ocean Spray Wave Juices, i.e., products without caffeine or sparkling water.  We believe this occurred sometime in 2016.

We will file a notice of related case in California.

Regards,
Andrew


Andrew Levine
B R A U N **H A G E Y** & B O R D E N  LLP
Direct:  (415) 599-0207


---

**From:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>
**Sent:** Sunday, May 2, 2021 8:19 AM
**To:** Toby Rowe <rowe@braunhagey.com>; Julia Anne Matheson <jmatheson@potomaclaw.com>
**Cc:** Andrew Levine <levine@braunhagey.com>; Marci Lerner Miller <mmiller@potomaclaw.com>; John Snyder <jsnyder@potomaclaw.com>
**Subject:** Re: Wave Soda / Ocean Spray cases

**\*\*\* EXTERNAL MESSAGE \*\*\***

Dear Andrew and Toby,


Enclosed is the signed waiver.  We look forward to receiving yours from the D. Mass case--I don't see that we have that yet.

We wanted to propose to you that we file joint motions in both cases proposing mutually agreeable briefing schedules on the procedural issues.

We assume that you will be filing a motion in the Mass. court to transfer the case to California. We plan to file a motion to stay the California case pending determination of the Mass. Court as to your anticipated motion.

EXHIBIT 6
Page 48

So, proposed orders would provide that, by dates specified, we file a motion to stay in the SD Cal. case (which you would of course be free to oppose by a date specified), and you would file a motion to dismiss, transfer and/or stay in the D. Mass. case (which we would be free to oppose by a date specified).   Dates for each defendant party to file an answer or Rule 12 response would be extended until x days after Judge Wolf decides your motion.

Finally, please advise if you are planning to comply with the S.D Cal. local rules, Civil Rule 40.1 regarding Notice of Related cases, in which case we will not need to file one.

We look forward to hearing from you.

regards,

Janet

**Janet F. Satterthwaite** | Partner/ Chair, Trademark Practice | Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004
Tel: (202) 486-1578 | Fax: (202) 318-7707
jsatterthwaite@potomaclaw.com | www.potomaclaw.com

https://www.potomaclaw.com/professionals-janet-f-satterthwaite



*This e-mail and any attachments may contain information that is private, confidential, and/or privileged. If you are not the intended recipient, please notify us immediately and destroy all copies of this message and any attachments.*

**From:** Toby Rowe <rowe@braunhagey.com>
**Sent:** Wednesday, April 28, 2021 1:20 PM
**To:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>; Julia Anne Matheson <jmatheson@potomaclaw.com>
**Cc:** Andrew Levine <levine@braunhagey.com>; Marci Lerner Miller <mmiller@potomaclaw.com>
**Subject:** RE: Wave Soda v. Ocean Spray - Case No. 3:21-cv-00809-GPC-BLM (S.D. Cal.)

⚠ **EXTERNAL**
Thanks Janet.  The additional waiver form is a second copy for Ocean Spray pursuant to Rule 4(d)(1)(C), rather than for the Doe defendants.  We appreciate the courtesy of waiving service for Ocean

EXHIBIT 6
Page 49

Spray.

Best,
Toby

J. Tobias Rowe
**B R A U N H A G E Y & B O R D E N** LLP
Direct: (415) 366-1232

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

---

**From:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>
**Sent:** Tuesday, April 27, 2021 6:23 AM
**To:** Toby Rowe <rowe@braunhagey.com>; Julia Anne Matheson <jmatheson@potomaclaw.com>
**Cc:** Andrew Levine <levine@braunhagey.com>; Marci Lerner Miller <mmiller@potomaclaw.com>
**Subject:** Re: Wave Soda v. Ocean Spray - Case No. 3:21-cv-00809-GPC-BLM (S.D. Cal.)

**\*\*\* EXTERNAL MESSAGE \*\*\***
Hi Toby,

Further to my email of a moment ago, I just noticed that there is also a waiver form for the John Doe Defendants. We are not able to waive or accept service for them, since we do not know who they are, nor do we represent them. We will waive as to Ocean Spray.

regards,

Janet

**Janet F. Satterthwaite** | Partner/ Chair, Trademark Practice | Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004
Tel: (202) 486-1578 | Fax: (202) 318-7707
jsatterthwaite@potomaclaw.com | www.potomaclaw.com

https://www.potomaclaw.com/professionals-janet-f-satterthwaite

EXHIBIT 6
Page 50



*This e-mail and any attachments may contain information that is private, confidential, and/or privileged. If you are not the intended recipient, please notify us immediately and destroy all copies of this message and any attachments.*

---

**From:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>
**Sent:** Tuesday, April 27, 2021 9:17 AM
**To:** Toby Rowe <rowe@braunhagey.com>; Julia Anne Matheson <jmatheson@potomaclaw.com>
**Cc:** Andrew Levine <levine@braunhagey.com>
**Subject:** Re: Wave Soda v. Ocean Spray - Case No. 3:21-cv-00809-GPC-BLM (S.D. Cal.)

Thanks Toby,

We will waive service.

regards

Janet

**Janet F. Satterthwaite** | Partner/ Chair, Trademark Practice | Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004
Tel: (202) 486-1578 | Fax: (202) 318-7707
jsatterthwaite@potomaclaw.com | www.potomaclaw.com

https://www.potomaclaw.com/professionals-janet-f-satterthwaite



*This e-mail and any attachments may contain information that is private, confidential, and/or privileged. If you are not the intended recipient, please notify us immediately and destroy all copies of this message and any attachments.*

EXHIBIT 6
Page 51

**From:** Toby Rowe <rowe@braunhagey.com>
**Sent:** Monday, April 26, 2021 11:50 PM
**To:** Janet Satterthwaite <jsatterthwaite@potomaclaw.com>; Julia Anne Matheson <jmatheson@potomaclaw.com>
**Cc:** Andrew Levine <levine@braunhagey.com>
**Subject:** Wave Soda v. Ocean Spray - Case No. 3:21-cv-00809-GPC-BLM (S.D. Cal.)

⚠ **EXTERNAL**

Julia and Janet,

Attached please find a copy of the complaint by Wave Soda against Ocean Spray that was filed on Friday, April 23 in United States District Court for the Southern District of California.  In our letter of April 9, we advised Ocean Spray that Wave intended to file suit in the Southern District of California unless the parties could reach an agreement to remedy Ocean Spray's infringement of Wave's trademarks and trade dress.  Ocean Spray's response, which was to mislead Wave about Ocean Spray's intentions to file a preemptive action in the District of Massachusetts, is unfortunate.

We also have attached a request to waive service of summons.  Please let us know if Ocean Spray will waive service or whether we should proceed to serve the complaint.

Regards,
Toby

J. Tobias Rowe

**B R A U N HAGEY & B O R D E N** LLP
Direct:  (415) 366-1232

**San Francisco (Main Office)**
351 California St., 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

EXHIBIT 6
Page 52

# EXHIBIT 7

EXHIBIT 7
Page 53



# United States of America
## United States Patent and Trademark Office

# OCEAN SPRAY WAVE

**Reg. No. 4,641,901**

**Registered Nov. 18, 2014**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

OCEAN SPRAY CRANBERRIES, INC. (DELAWARE CORPORATION)
ONE OCEAN SPRAY DRIVE
LEGAL DEPARTMENT
LAKEVILLE-MIDDLEBORO, MA 02349

FOR: FRUIT JUICE AND FRUIT JUICE DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 12-12-2013; IN COMMERCE 12-12-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,963,144, 2,093,144, AND 2,150,919.

SN 85-883,886, FILED 3-22-2013.

KAPIL BHANOT, EXAMINING ATTORNEY



**Deputy Director of the United States**
**Patent and Trademark Office**

**EXHIBIT 7**
**Page 54**

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL**
> **TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE**
> **DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

> **The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or**
> **reminder of these filing requirements.**

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

Page: 2 / RN # 4,641,901

EXHIBIT 7
Page 55

# EXHIBIT 8

EXHIBIT 8
Page 56

J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
  levine@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

ATTORNEYS FOR PLAINTIFF
WEDGE WATER LLC DBA WAVE SODA

# UNITED STATE DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEDGE WATER LLC DBA WAVE SODA, | Case No.: 3:21-cv-00809-GPC-BLM |
| Plaintiff, | **PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE, TO DEFENDANT OCEAN SPRAY CRANBERRIES, INC.** |
| v. | |
| OCEAN SPRAY CRANBERRIES, INC., and DOES 1 through 25, inclusive, | **Compl. Filed:**  April 26, 2021 |
| Defendants. | **Trial Date:**   None |

Pursuant to Federal Rules of Civil Procedure 34, Plaintiff Wedge Water LLC d/b/a Wave Soda ("Plaintiff" or "Wave") hereby demands that, within ten (10) days of service of these request, Defendant Ocean Spray Cranberries, Inc. ("Defendant" or "Ocean Spray") respond in writing to each of the following requests for production of documents, and produce for inspection, photographing and copying the documents and tangible things in the categories below at the law offices of BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104.

## DEFINITIONS

The following definitions are to be considered applicable to all document requests herein:

1. "**Plaintiff**" and "**Defendant**" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not party to the litigation.

2. "**Wave**" shall mean to include collectively and individually, Plaintiff Wedge Water LLC d/b/a Wave Soda, and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

3. "**Wave Soda Products**" shall mean sparkling beverage products sold by Wave under the marks NEW WAVE® and WAVE.

4. "**Current Ocean Spray Wave Product**" shall mean the line of sparkling beverage products currently sold by Ocean Spray under the "Ocean Spray Wave" name and identified in Plaintiff's Complaint as the "Infringing Products."

5. "**Former Ocean Spray Wave Product**" shall mean the line of non-sparkling juice products formerly sold by Ocean Spray under the "Ocean Spray Wave" name and identified in Plaintiff's Complaint as the "Discontinued Products."

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO
DEFENDANT OCEAN SPRAY CRANBERRIES, INC., SET ONE

6.    "**Walmart**" shall mean the retailer Walmart Inc. and its affiliates, subsidiaries, parents, and related entities, including without limitation the retailer Sam's Club.

7.    "**Communication**" or "**Communications**" means the transmission of information (in the form of facts, idea, inquiries or otherwise).

8.    "**Document**" or "**documents**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in FED. R. CIV. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

9.    "**Identify**" when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10.    "**Identify**" when referring to documents, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).  In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy FED. R. CIV. P. 34(a)(1)(A).

11.    The following rules of construction apply to all discovery requests:

a.    The terms "**all**," "**any**," and "**each**" shall each be construed as encompassing any and all.

b.    The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

c.    The use of the singular form of any word includes the plural and vice versa.

PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT OCEAN SPRAY CRANBERRIES, INC., SET ONE

**EXHIBIT B
Page 59**

## **INSTRUCTIONS**

1.     The following inspection demands seek production for inspection and copying of all responsive documents in your possession, custody, or control, wherever located, and specifically includes all documents in the possession, custody, or control of your agents, partners, officers, employees, attorneys, accountants, investigators, representatives, and each of them.

2.     Any non-identical copy of a document, including copies with notes, highlighting, comments, or marginalia of any nature, and drafts, must be **identified** and produced as a separate document.

3.     If there are no documents responsive to a category in this inspection demand, please state so in writing.

4.     For each document that you decline to make available for inspection and copying on the grounds of privilege or the attorney work product rule, provide the following information:

        a.     The date on which the document was created.

        b.     The title of the document.

        c.     The nature and contents of the document.

        d.     **Identify** each person or entity that received a copy of the document or to whom the document or its contents were disclosed.

        e.     **Identify** the privilege or rule that you contend protects the document from disclosure.

        f.     **Identify** each fact on which you base your contention that the privilege or rule identified in your response is applicable.

5.     If any material is redacted from a document, please so indicate in the response to the inspection demand and state the basis for such redaction.

6.     Please produce the original of each document and all copies thereof, if any copy is other than identical to the original, in the order called for in the categories listed below.

3     Case No. 3:21-cv-00809-GPC-BLM

7.     If, for any reason, any of the documents, objects or tangible things to be produced pursuant to these inspection demands has been destroyed, lost or otherwise disposed of, please state for each category the following information:

a.     A description of the document, object or tangible thing to be produced.  If the destroyed, lost or otherwise disposed of item is a document, **identify** the document by date, drafter, recipient and subject matter.

b.     The date the document, object or tangible thing was lost, destroyed or disposed of.

c.     All witnesses who have knowledge of the loss, destruction or disposal.

d.     If the loss, destruction or disposal is related to an object or tangible thing, **identify** all documents that relate or refer to the loss, destruction or disposal.

## **DOCUMENTS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 1:**

All **documents** since January 1, 2017 concerning or relating to **Wave** or **Wave Soda Products**.

**REQUEST FOR PRODUCTION NO. 2:**

Documents since January 1, 2021 sufficient to show **Ocean Spray**'s plans to distribute, produce, market, sell or stock the **Current Ocean Spray Wave** product beyond **Walmart**.

**REQUEST FOR PRODUCTION NO. 3:**

**Documents** since January 1, 2017 sufficient to show when **Ocean Spray** first conceived of and began developing the **Current Ocean Spray Wave Product**.

**REQUEST FOR PRODUCTION NO. 4:**

**Documents** since January 1, 2017 sufficient to show when **Ocean Spray** selected the name "Ocean Spray Wave" for the **Current Ocean Spray Wave Product**.

4        Case No. 3:21-cv-00809-GPC-BLM

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO
DEFENDANT OCEAN SPRAY, CRANBERRIES, INC., SET ONE

1  **REQUEST FOR PRODUCTION NO. 5:**

2      **Documents** sufficient to show when you decided to cease or discontinue

3  selling the **Former Ocean Spray Wave Product** and when the cessation of sales

4  occurred.

5

6  Dated:  May _____, 2021                    Respectfully Submitted,

7                                              BRAUNHAGEY & BORDEN LLP

8

9                                              By: _____

10                                                  Andrew Levine

11                                              *Attorneys for Plaintiff*
                                                *Wedge Water LLC dba Wave Soda*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 9

EXHIBIT 9
Page 63

1   J. Noah Hagey, Esq. (SBN: 262331)
     hagey@braunhagey.com

2   Andrew Levine, Esq. (SBN: 278246)
     levine@braunhagey.com

3   J. Tobias Rowe, Esq. (SBN: 305596)
     rowe@braunhagey.com

4   BRAUNHAGEY & BORDEN LLP
  351 California Street, 10th Floor

5   San Francisco, CA 94104
  Telephone: (415) 599-0210

6   Facsimile: (415) 599-0210

7   ATTORNEYS FOR PLAINTIFF
  WEDGE WATER LLC DBA WAVE SODA

8

9           **UNITED STATE DISTRICT COURT**

10        **SOUTHERN DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| WEDGE WATER LLC DBA WAVE SODA, | Case No.: 3:21-cv-00809-GPC-BLM |
| Plaintiff, | **PLAINTIFF'S INTERROGATORIES TO DEFENDANT OCEAN SPRAY CRANBERRIES, INC., SET ONE** |
| v. | |
| OCEAN SPRAY CRANBERRIES, INC., and DOES 1 through 25, inclusive, | **Compl. Filed:** April 26, 2021<br>**Trial Date:** None |
| Defendants. | |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Wedge Water LLC d/b/a Wave Soda ("Plaintiff" or "Wave") hereby demands that, within ten (10) days of service of these interrogatories, Defendant Ocean Spray Cranberries, Inc. ("Defendant" or "Ocean Spray") answer under oath the interrogatories set forth below by Plaintiff.

## DEFINITIONS

The following definition are to be considered applicable to all document requests herein:

1.      "**Plaintiff**" and "**Defendant**" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not party to the litigation.

2.      "**Wave**" shall mean to include collectively and individually, Plaintiff Wedge Water LLC d/b/a Wave Soda, and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

3.      "**Current Ocean Spray Wave Product**" shall mean the line of sparkling beverage products currently sold by Ocean Spray under the "Ocean Spray Wave" name and identified in Plaintiff's Complaint as the "Infringing Products."

4.      "**Former Ocean Spray Wave Product**" shall mean the line of non-sparkling juice products formerly sold by Ocean Spray under the "Ocean Spray Wave" name and identified in Plaintiff's Complaint as the "Discontinued Products."

5.      "**Walmart**" shall mean the retailer Walmart Inc. and its affiliates, subsidiaries, parents, and related entities, including without limitation the retailer Sam's Club.

6.      The following rules of construction apply to all discovery requests:

a.      The terms "**all**," "**any**," and "**each**" shall each be construed as encompassing any and all.

PLAINTIFF'S INTERROGATORIES TO DEFENDANT
OCEAN SPRAY CRANBERRIES, INC., SET ONE

EXHIBIT 6
Page 65

b.      The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

c.      The use of the singular form of any word includes the plural and vice versa.

## **INSTRUCTIONS**

1.      Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits.  If an interrogatory cannot be answered completely, answer it to the extent possible.

2.      If you are asserting a privilege or making an objection to an interrogatrory, you must specifically assert the privilege or state the objection in your written response.

3.      If you cannot answer the following interrogatory in full, after exercising due dilligence to secure the information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portion.

4.      Your answers to these interrogatories must be verified, dated, and signed.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

Describe when **Ocean Spray** first become aware of **Wave** and the **Wave Soda Products**.

**INTERROGATORY NO. 2:**

Describe **Ocean Spray**'s plans and timelines for selling, marketing, or distributing the **New Ocean Spray Wave Products** in retail outlets other than **Walmart**.

1 **INTERROGATORY NO. 3:**

2      Describe when **Ocean Spray** first conceived of and began developing the **New**

3 **Ocean Spray Wave Products**.

4 **INTERROGATORY NO. 4:**

5      Describe when **Ocean Spray** selected the name "Ocean Spray Wave" for the

6 **New Ocean Spray Wave Products**.

7 **INTERROGATORY NO. 5:**

8      Describe when **Ocean Spray** stopped selling the **Former Ocean Spray Wave**

9 **Products**.

10

11 Dated:  May \_\_\_\_, 2021             Respectfully Submitted,

                                         BRAUNHAGEY & BORDEN LLP

12

13

14                                          By:  _____

15                                              Andrew Levine

16                                        *Attorneys for Plaintiff*

17                                        *Wedge Water LLC dba Wave Soda*

18

19

20

21

22

23

24

25

26

27

28

                                     3      Case No. 3:21-cv-00809-GPC-BLM

# EXHIBIT 10

**EXHIBIT 10**
**Page 68**

J. Noah Hagey, Esq. (SBN: 262331)
   hagey@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
   levine@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
   rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

ATTORNEYS FOR PLAINTIFF
WEDGE WATER LLC DBA WAVE SODA

# UNITED STATE DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEDGE WATER LLC DBA WAVE SODA,<br><br>      Plaintiff,<br><br>      v.<br><br>OCEAN SPRAY CRANBERRIES, INC., and DOES 1 through 25, inclusive,<br><br>      Defendants. | Case No.: 3:21-cv-00809-GPC-BLM<br><br>**PLAINTIFF WEDGE WATER LLC D/B/A WAVE SODA'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT OCEAN SPRAY CRANBERRIES**<br><br>**Compl. Filed:**   April 26, 2021<br>**Trial Date:**     None |

PLAINTIFF'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT
OCEAN SPRAY CRANBERRIES, INC.

EXHIBIT D
Page 69

1   PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure

2   30(b)(6), Plaintiff Wedge Water LLC d/b/a Wave Soda ("Plaintiff" or "Wave") will

3   take the deposition upon oral examination of Defendant Ocean Spray Cranberries,

4   Inc. ("Defendant" or "Ocean Spray"), to be recorded by stenographic means and

5   videotape, on _____, 2021 at the law offices of BraunHagey & Borden LLP,

6   351 California Street, 10th Floor, San Francisco, CA 94104.

7   Defendant Ocean Spray Cranberries, Inc. is requested to designate the Person

8   or Persons Most Knowledgeable ("PMK") and prepared to testify on behalf of Ocean

9   Spray Cranberries, Inc. concerning the subject matter described in Attachment A

10   hereto.  This deposition will take place within ten days of Ocean Spray's responses to

11   Plaintiff's Requests for Production, Set One, and Interrogatories, Set One, or at

12   another date and time mutually agreed-upon by the parties.  If necessary, each

13   deposition will be adjourned until completed.

14   Plaintiff requests that Ocean Spray Cranberries, Inc. provide written notice at

15   least five (5) business days before the deposition of the name(s) and employment

16   position(s) of the individual(s) designated to testify on Ocean Spray Cranberries,

17   Inc.'s behalf.

18

19   Dated: May 10, 2021, 2021                    Respectfully Submitted,

20                                                BRAUNHAGEY & BORDEN LLP

21

22                                                By: _____

23                                                      Andrew Levine

24                                                *Attorneys for Plaintiff*
                                                 *Wedge Water LLC dba Wave Soda*

25

26

27

28

PLAINTIFF'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT
OCEAN SPRAY CRANBERRIES, INC.

EXHIBIT D
Page 70

**ATTACHMENT A**

**I.     DEFINITIONS**

As used in these Requests:

1.       "**Plaintiff**" and "**Defendant**" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not party to the litigation.

2.       "**Wave**" shall mean to include collectively and individually, Plaintiff Wedge Water LLC d/b/a Wave Soda, and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

3.       "**Wave Soda Products**" shall mean sparkling beverage products sold by Wave under the marks NEW WAVE® and WAVE.

4.       "**New Ocean Spray WAVE Product**" shall mean the line of sparkling beverage products currently sold by Ocean Spray under the "Ocean Spray Wave" name and identified in Plaintiff's Complaint as the "Infringing Products."

5.       "**Former Ocean Spray WAVE Product**" shall mean the line of non-sparkling juice products formerly sold by Ocean Spray under the "Ocean Spray Wave" name and identified in Plaintiff's Complaint as the "Discontinued Products."

6.       "**Walmart**" shall mean the retailer Walmart Inc. and its affiliates, subsidiaries, parents, and related entities, including without limitation the retailer Sam's Club.

7.       "**Communication**" or "**Communications**" means the transmission of information (in the form of facts, idea, inquiries or otherwise).

8.       "**Document**" or "**documents**" is defined to be synonymous in meaning and equal in scope to the usage of the term "**documents or electronically stored information**" in FED. R. CIV. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

2       Case No. 3:21-cv-00809-GPC-BLM

PLAINTIFF'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT OCEAN SPRAY CRANBERRIES, INC.

9. The following rules of construction apply to all discovery requests:

a. The terms "**all**," "**any**," and "**each**" shall each be construed as encompassing any and all.

b. The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

c. The use of the singular form of any word includes the plural and vice versa.

## II. DEPOSITION SUBJECT MATTER

Pursuant to Rule 30(b)(6), the deponent must have knowledge and shall be able to competently testify concerning the following topics:

1. When **Ocean Spray** first became aware of **Wave** or **Wave Soda Products**, and when **Ocean Spray** first conceived of and began developing the **New Ocean Spray WAVE Product**.

2. **Ocean Spray**'s plans and timelines for selling, marketing, or distributing the **New Ocean Spray WAVE Products** in retail outlets other than **Walmart**.

3. **Ocean Spray**'s decision to use the name "Ocean Spray Wave" for the **New Ocean Spray WAVE Product**.

4. **Ocean Spray**'s decision to cease or discontinue selling the **Former Ocean Spray WAVE Product** and when the cessation of sales occurred.

5. **Ocean Spray**'s collection and production of **documents** and **communications** responsive to **Wave**'s Requests for Production of Documents, Set One.

PLAINTIFF'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT
OCEAN SPRAY CRANBERRIES, INC.

EXHIBIT 0
Page 72